IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

NORTH EAST INDEPENDENT SCHOOL DISTRICT,
*Plaintiff – Appellant*
*v.*

I.M. b/n/f BIANCA R.,
*Defendant-Appellee*

On Appeal from the United States District Court
For the Western District of Texas
Civil Action No. 5:23-CV-769-DAE
Honorable David Alan Ezra, Judge

BRIEF OF APPELLEE

I.M. b/n/f BIANCA R.

Yvonnilda Muñiz, Attorney at Law
State Bar No. 24007717
LAW OFFICE OF YVONNILDA MUÑIZ, P.C.
P.O. Box 92018
Austin TX 78709
Tel.: (512) 633.9944/(512) 705.4191
Fax: (888) 398-8808
Email: ygmuniz@outlook.com

*COUNSEL FOR APPELLEE*
*I.M. b/n/f BIANCA R.*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons as described in the fourth sentence of the 5th Cir. Rule 28.2.1 have interest in the outcome of this case. These representations are made in order that the judges of this Honorable Court may evaluate possible disqualification or recusal:

1) PLAINTIFFS – APPELLANT:

North East Independent School District
Richard R. Lopez
State Bar No. 24013059
Email: rlopez@shl-law.com
Christopher H. Schulz
State Bar No. 24060576
Email: eschulz@slh-law.com

SCHULMAN, LOPEZ, HOFFER & ADELSTEIN, LLP.
845 Proton Road
San Antonio, TX. 78258
Telephone:  (210) 538-5385
Fax:         (210) 538-5384
Counsel for Appellant

2) DEFENDANTS – APPELLEES:

I.M. by next friend Bianca R.

Yvonnilda Muñiz
State Bar No. 24007717
Email: ygmuniz@outlook.com
LAW OFFICE OF YVONNILDA MUÑIZ, P.C.
P.O. BOX 92018
Austin, TX. 78709
Telephone: (512) 633-9944
Counsel for Appellees

/s/Yvonnilda Muñiz
Counsel for Appellees

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Defendant-Appellee I.M., by next friend Bianca R., does not believe oral argument is needed. The District Court judge correctly affirmed the Special Education Hearing Officer's (SEHO) decision and therefore there is no clear error.

Should the Court grant NEISD's request for oral argument, I.M. will participate in defending the District Court's decision.

# TABLE OF CONTENTS

Certificate of Interested Persons………………………………………………i

Statement Regarding Oral Argument……………………………………….ii

Table of Contents………………………………………………………iii-iv

Table of Authorities……………………………………………...v-vi

Statement of Issues Presented for Review………………………………..1

Statement of the Case……………………………………………………2

     I.     About the Student……………………………………………..2

          A. 2020-2021 School Year (Grade 2)…………………………….4

          B. 2021-2022 School Year (Grade 3)…………………………….5

          C. 2022-2023 School Year (Grade 4)…………………………….8

     II.    The Two Day Hearing in April 2023…………………………10

     III.   The SEHO Finds a Denial of FAPE Concerning ESY
          And Communication Needs…………………………………10

     IV.   The Federal District Court…………………………………...12

     V.    This Appeal…………………………………………………12

SUMMARY OF THE ARGUMENT…………………………………...13

ARGUMENT…………………………………………………………...15

    I.     Standard of Review…………………………………………...15

II. NEISD Failed to Provide I.M. with FAPE Including an IEP Individualized to Meet his Unique Needs and ESY Services to Improve Non-Academic (Functional) Skills………………………………………………………16

     A. The Purpose of ESY and NEISD's Concession I.M. Needed ESY…..21

III. NEISD Failed to Individualize I.M.'s IEP to Address Progress in Elopement, Toileting, and Communication Based on Assessment and Performance………………………………………………………….25

IV. I.M.'s Need For Communication All Year………………………………27

V. Issues Not Before the SEHO or District Court – Least Restrictive Environment and Collaboration…………………………………………28

VI. NEISD Forfeited Claim that I.M. is not the Prevailing Party Entitled to Attorneys' Fees………………………………………………………….30

CONCLUSION……………………………………………………………...31

CERTIFICATE OF SERVICE……………………………………………….32

CERTIFICATE OF COMPLIANCE…………………………………………33

# TABLE OF AUTHORITIES

## CASES

*Adam J. ex rel Robert J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 808-09 (5th Cir. 2003) ................................................................................................ 19

*Alamo Heights Independent School District v. State Board of Education*, 790 F.2d 1153, 1158 (5th Cir. 1986) ......................................................... 23

*Battle v. Pennsylvania*, 629 F.2d 269, 281 (3d Cir. 1980) ...................................... 22

*Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206-07, 102 S. Ct. 3034, 3051, 73 L. Ed. 2d 690 (1982) .......................................... 15

*Crawford v. Pittman*, 708 F.2d 1028, 1035 (5th Cir. 1983) ................................... 22

*Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F. 3d 245 (5th Cir. 1997) ........................................................................ ….15, 16, 18,19, 25, 27, 28, 29

*D.C. v. Klein Indep. Sch. Dist.*, 860 Fed. App'x 894, 906 (5th Cir. 2021) ....... 28, 29

*Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*, 197 L. Ed. 2d 335; 137 S. Ct. 988; 580 U.S. 386 (2017) ...................................................................... 14, 16, 17, 27, 31

*Georgia Ass'n of Retarded Citizens v. McDaniel*, 716 F.2d 1565, 1576 (11th Cir. 1983) ................................................................................................ 22

*H.W. v. Comal Indep. Sch. Dist.*, 32 F. 4th 454, 470 (5th Cir. 2022) ..................... 19

*Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 349 (5th Cir. 2000) ............ 20

*Houston Indep. Sch. Dist. v. V.P. ex rel. Juan P.*, 582 F.3d 576, 583 (5th Cir. 2009) ................................................................................................ 13

*Indigenous Peoples of the Coastal Bend v. United States Army Corps of Eng'rs,* 2025 U.S. App. LEXIS 7245 at *10, 2025 WL 938104 (5th Cir. 2025) ............. 30

*Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 213 (5th Cir. 2006) ......................... 13

*Johnson ex rel. Johnson v. Indep. Sch. Dist. No. 4,* 921 F.2d 1022 (10th Cir. 1990) ................................................................................................................... 22, 23

*Klein Indep. Sch. Dist. v. Hovem*, 690 F.3d 390 (5th Cir. 2012) ............... 15, 19, 20

*LeJeune G. v. Khapara Charter Sch*., 779 F. App'x 984 (3rd Cir. 2019) ... 27, 28, 30

*Renee J. ex rel. C.J. v. Houston Indep. Sch. Dist.*, 813 F.3d 523, 529 (5th Cir. 2019) ................................................................................................................... 15

*Richardson Indep. Sch. Dist. v. Michael Z.*, 580 F.3d 286, 293 (5th Cir. 2009) ..... 15

*Teague Indep. Sch. Dist. v. Todd L.*, 999 F2d 127, 131 (5th Cir. 1993) ................. 13

*Yaris v. Special School Dist.*, 558. F. Supp. 545, 552 **22 (E.D. Mo. 1983), aff'd, 728 F.2d 1055 (8th Cir. 1984) ............................................................................ 22

**STATUTES**

20 U.S.C. § 1414(d)(3)(A)(iv) ...................................................................... 25

20 U.S.C. §§ 1414(d)(3)(A) and (B). ............................................................ 26

20 U.S.C. §1414(d)(3)(B)(i)……………………………….. …………………26

20 U.S.C. §§1414(d)(1)(A)(i)(I)-(IV) ............................................................ 14

**<u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>**

1.      Whether the District Court committed error in finding I.M. was denied a Free Appropriate Public Education (FAPE) when it found the NEISD failed to provide him an appropriate Extended School Year (ESY) program;

2.      Whether the District Court committed error in finding I.M.'s Individual Education Program was not reasonably calculated to enable him to receive educational benefits in light of his unique circumstances; and,

3.      Whether NEISD waived its right to appeal the District Court's finding that I.M. met prevailing party status and reasonable attorney's fees.

# STATEMENT OF THE CASE

## I.     *About the Student.*

I.M. is a very vulnerable child, essentially non-verbal and with a significant history of running off, referred to as "elopement." ROA.2892-93. Elopement is defined as leaving, running or escaping a designated area without adult permission. ROA.149, 2893. I.M.'s history of elopement is well-documented since the 2018-2019 school year. ROA.2910. His elopement is so severe that he has run out of the school building and onto a busy highway, despite having two support staff assigned to him. ROA.149,2898. When I.M. elopes, he is unconcerned with his safety and is likely to cross streets without awareness of traffic. ROA. 149. I.M. uses a voice output device (VOD) to communicate. ROA.145. When he elopes, he does not take his VOD, making it difficult for him to communicate because his language skills remain minimal. ROA.149. North East Independent School District (NEISD) has not resolved I.M.'s elopement problems. In addition, I.M. has also had significant toileting issues. ROA.149.

At the time of the administrative hearing, I.M. was a ten-year old fourth grade student. ROA.144, 2892. NEISD deemed I.M. eligible for special education and related services under the IDEA as a child with Autism, a Speech Impairment and an Intellectual Disability. ROA.144, 2892. I.M. is non-verbal. ROA.145. Consistent with his autism identification, I.M. has communication and socialization deficits,

engages in repetitive behaviors and displays unusual sensory responses. ROA.144. He requires constant supervision throughout the school day due to safety concerns related to elopement and sensory seeking behaviors. ROA.145.

I.M.'s significant language impairment is in the areas of receptive, expressive, and pragmatic deficits. ROA.145. As a non-verbal child, I.M. communicates through gestures, facial expressions, his VOD, and a small vocabulary of spoken words. ROA.145.

I.M.'s VOD is an iPad with a communication application called Proloquo2Go. ROA.145. He carries his VOD in his backpack and uses it throughout the school day to request items, engage in activities, and to request assistance. ROA.145. At home, he uses it to request preferred activities and items. ROA.145. During the regular school year, he takes his VOD home in the evenings, on weekends, and over school breaks. ROA.145. However, during the summer, prior to the litigation, the NEISD only allowed him to take his VOD home when ESY services were in session. ROA.145. When ESY was not in session, I.M. was without his VOD which significantly limited his ability to communicate. ROA.145.

As is typical of students with autism, I.M. has sensory processing needs in the areas of visual, tactile, and body awareness stimuli. ROA.145. He requires Occupational Therapy (OT) to address sensory seeking behaviors and self-regulation throughout the school day. ROA.145.

NEISD determined that I.M. should receive his education mostly in the Alternative Learning Environment (ALE) classroom. An ALE is a special education setting with a small to student ratio (2:1), where students are provided language arts, math, reading, science, and social studies. ROA.147, 2898. I.M. received instruction in general education in special areas, science activities, math centers, and morning meeting. ROA.147. He also was included with general education students at lunch, recess, and assemblies. ROA.147.

A.      **2020-2021 School Year (Grade 2)**

During the first nine weeks of his second grade year, I.M. engaged in elopement on 83% (eighty-three) percent of school days. ROA.146. By the end of the year, his rate of elopement had decreased to just 22% (twenty-two) percent. ROA.146. I.M. even went 12 (twelve) consecutive school days without any elopement behavior. ROA.146.

NEISD did not offer I.M. any educational services from the last school day of the school on May 28, 2021 until ESY services began on June 7, 2021. ROA.146. I.M then received ESY services four hours a day, four days a week until July 1, 2021. ROA.146. He received no educational services from NEISD from July 2, 2021 until school resumed for the 2021-2022 school year on August 16, 2021. ROA.146. During the summer of 2021, I.M. did not have his VOD except for the 25 days he was in ESY services, when he was allowed to take his VOD home.

**B.** **2021-2022 School Year (Grade 3)**

Following the lack of consistent educational services from NEISD over the summer of 2021, I.M. regressed significantly in elopement. ROA.146. He never recouped the loss. ROA.146. During the 2021-2022 school year, I.M. elopement increased, despite the familiar setting and even a familiar teacher as follows:

| School Period | Elopement Rate | Longest Period of No Elopement |
|---|---|---|
| First 9 weeks | 46% | 5 school days |
| Second 9 weeks | 42% | 4 school days |
| Third 9 weeks | 43% | 4 school days |
| Fourth 9 weeks | 40% | 3 school days |

ROA. 2909.

Thus, during the entire school year, I.M. engaged in elopement more than forty percent of school days with five school days the longest stretch without elopements. ROA.146. This regression in elopement was significant following the break in services during the summer of 2021 and I.M. never recouped the loss during the 2021-2022 school year. ROA.146. He was never again at the 22% rate he was at during the 2020-2021 school year or able to go 12 days without eloping. ROA.146.

In third grade, I.M. also regressed in toileting. ROA.147. Prior to spring break[1], in March 2022, I.M. independently requested to use the restroom and followed staff prompts to use the restroom. ROA.147, 2910. But, after returning from spring break, I.M. twice pulled his pants down and urinated in the classroom. ROA.147. I.M.'s IEP states that I.M. "has documented history of regression caused by the interruption of services and attended ESY ever summer since the 2018-2019 school year," and that he would "receive an educational benefit from Extended ESY to order to reduce the potential loss of skills in regard to independence and behavior." ROA.2910.

NEISD's staff documented I.M.'s regression. His IEP noted that "[d]ata demonstrates that the student has shown regression following the interruption of services in behavior and skills related in independence (i.e. toileting)." ROA.2909. His IEP also stated that "[c]ontinuation of services by attending ESY will provide [I.M.] with an educational benefit by reducing the potential loss of skills related to independence and behavior." ROA.2909. Further, the IEP noted that there is "documented evidence that the interruption of services will cause [I.M] to regress in behaviors and skills related to independence (toileting)." ROA.2909.

_____

[1] Spring Break is a five day student vacation typically held in the middle of the Spring semester.

On April 12, 2022, I.M.'s Admission, Review, and Dismissal (ARD) Committee met to develop his IEP for the upcoming school year and to plan for ESY services. ROA.147. The ARD Committee reconvened on May 16 and May 24, to resolve a disagreement over I.M.'s ESY services. ROA.147.

The ARD Committee agreed I.M. required ESY services because interruptions in services caused him to regress in behavior and skills related to independence, including toileting. ROA.147. The ARD Committee agreed I.M. had suffered significant regression in the behavior of elopement over the summer break between the end of the 2020-2021 and the beginning of the 2021-2022 school year and toileting over spring break. ROA.147-48.

Despite I.M.'s mother's request for more ESY services for the entire summer to avoid regression in elopement and toileting, NEISD offered I.M. just four hours, four days a week of ESY services for six weeks of the summer break from June 6 to June 30, 2022 and then again from July 11 to July 21, 2022. ROA.148.

During summer 2022, I.M. engaged in elopement twenty-five percent of the days during the ESY program with no toileting accidents. ROA.148. I.M. received no educational services for 25 days during summer 2022 of a possible 12 weeks of 5 days a week (i.e. 60 days), he received no services between May 27, 2022, the last day of the 2021-2022 school year, and June 6, 2022, the start of ESY services, missing out on 5 days of services. ROA.148.

I.M. received no educational services from the NEISD from the end of ESY services on July 21, 2022 to August 10, 2022, the first day of school of the 2022-23 school year, missing out on 13 days of services. ROA.148. He also missed out on 7 days of services because ESY services were provided only 4 days a week. ROA.148.

**C.      2022-2023 School Year (Grade 4)**

When I.M. returned to school for 4th grade, he had a new teacher, who collected data differently. ROA.148-149, 2896. But even that data showed he was unable to maintain skills in not eloping and with toileting despite some ESY. ROA.2897.

Based on limited data, I.M. eloped three times in fourteen days during the first two weeks of school. ROA.149, 2897.

Significantly, on October 31, 2022, I.M. eloped, leaving the classroom, the school building, and the campus. ROA.150, 2912 n. 7. Thirty minutes later, he was finally located on a heavily trafficked, busy street, where drivers stopped to catch and detain him until the principal finally showed up. ROA.150, 2912 n.7. As a very vulnerable child, I.M. was wholly unconcerned for his safety when he eloped and, when he left the school buildings during elopement, was likely to cross streets without awareness of traffic. ROA.149. When he eloped, he did not take his VOD with him, making it very difficult for him to communicate. ROA.149.

Although I.M. had no toileting accidents during ESY 2022, when he returned to school, he had twenty toileting accidents in forty-two school days. ROA.149. He never recouped his independence in toileting during the first nine weeks of the school year. ROA.149.

Not until nearly the end of the first nine weeks did NEISD take any action to help I.M.[2] NEISD failed to revise his Behavior Intervention Plan however, until November 4, 2022, more than six weeks after school began and as I.M. was continuing to elope into the street and on the school bus and to have toileting issues. ROA.150.

Despite I.M.'s continued regression and failure to recoup skills related to elopement and toileting, NEISD recommended the "standard" four weeks of ESY services for I.M. for the summer of 2023. ROA.150. NEISD contended the data did not support significant regression over breaks that could not be recouped in a reasonable time. ROA.150. The last day of school for the 2022-23 school year was May 30, 2023, and the first day of school for the 2023-24 school year was August 14, 2023. ROA.150.

---

[2] On October 14, 2022, the NEISD conducted a reevaluation and a functional behavior assessment (FBA) to analyze I.M.'s behavior of elopement. ROA.149. The goal was to eliminate elopement. ROA.149.

## II.     The 2 Day Hearing In April 2023.

In light of these concerns, the parent asked for a hearing in the fall of 2022 which was eventually held in April of 2023. ROA.143. Over two days, both parties had the opportunity to offer exhibits and testimony of witnesses and file written closing briefs. ROA.143. Each party had counsel. ROA.143. The NEISD did not and does not contest that the hearing was in any way procedurally improper.

## III.     The SEHO Finds A Denial Of FAPE Concerning ESY And Communication Needs.

The Special Education Hearing Officer (SEHO) found that the break in educational services in the summer of 2022 resulted in substantial regression in elopements following extended breaks. ROA.155. The evidence supported I.M.'s need for ESY for more than six weeks of the extended summer breaks. ROA.161. I.M. struggled with elopements following the summer breaks in 2021 and 2022 after receiving ESY services for only a portion of the summers. ROA.161. In fall of 2021, he never recouped the progress he lost over the summer and in 2022, he eloped from the classroom, the building, the campus, onto a busy street, and was at risk of substantial harm from the elopement. ROA.161.

The SEHO also concluded there was substantial regression in toileting that continued and was not recouped over the first nine weeks of the school year. ROA.161, 154-55. In addition, the evidence showed NEISD failed to consider I.M.'s need for ESY services appropriately because it failed to consider all potential

behavioral strategies, including providing additional ESY services, to maintain critical behavioral skills – elopement and toileting - that NEISD recognized as critical skills. ROA.155. NEISD itself recognized elopement and toileting were critical skills by providing ESY services to specifically address those two skills and by conducting an FBA to exclusively address elopement. ROA.155-56. I.M. experienced significant regression in these two critical skills without recouping his losses in a reasonable time. ROA.156. NEISD's failure to provide more ESY services put I.M. at risk of substantial harm from the elopement. ROA.156, 161.

The SEHO ordered:

(1)    The District was ordered to provide Student ESY from June 5, 2023, to August 3, 2023, exclusive of the week of July 3, 2023; and,

(2)    As ESY services during the summer of 2023, the District was ordered to provide Student four hours of services, four days per week, through District personnel or may contract to deliver the services through outside personnel with the capability to implement Student's IEP. ROA.162-63.

Concluding the VOD was "essential for communication for I.M. in all environments and [that] NEISD should not have withheld it from him for any portion of the year," the SEHO ordered that NEISD must provide I.M. year-round access to his VOD without breaks in availability. ROA.162-163.

Due to the IDEA's "stay-put" provision, I.M. is to continue to receive the VOD and to receive the same amount of ESY during the course of this litigation. 20 U.S.C. § 1415(j).

### IV.    The Federal District Court.

The NEISD appealed the SEHO's decision. ROA.2891. After having reviewed all the administrative record that the SEHO had, and receiving briefs from both parties, and hearing oral argument, the district court held for I.M. ROA.2918. The district court found that "the SEHO's focus on I.M.'s elopement and toileting was warranted in this case." ROA.2911. The district court upheld the SEHO's decision and found that the NEISD had denied I.M. a FAPE, notwithstanding some progress in academics. He concluded:

> Therefore, the Court finds that the SEHO was not wrong in weighing I.M.'s non-academic progress more heavily than his academic progress in determining that he failed to make sufficient non-academic progress under the IEP proposed. Although I.M. progressed on many of his goals, the record supports that he was still regressing and falling behind on his elopement and toileting after breaks. Accordingly, the Court finds that I.M. failed to make sufficient non-academic progress in key areas such as elopement and toileting upon returning from school breaks under the IEP proposed by the District. ROA.2917

The District Court also granted I.M. prevailing party status and awarded attorneys' fees. ROA.2920-22, 2941.

### V.    This Appeal.

The NEISD has again appealed.

## SUMMARY OF THE ARGUMENT

I.M. is a non-verbal autistic child eligible for special education and related services under the IDEA. ROA.144 FOF #1. [3] He has significant problems with elopement (including leaving the school building) and toileting. The District failed to carefully and fully provide for I.M.'s needs for Extended School Year (ESY) services to meet I.M.'s needs in elopement and toileting. ROA.2912. Two experienced judicial officers reviewed the administrative record and found that NEISD denied I.M., a non-verbal autistic child, a free appropriate public education (FAPE). ROA.160, 2917-18. No new evidence was offered on appeal to the district court.

Here, the district court's legal conclusions are supported by a preponderance of the evidence. ROA.2917-18. The district court committed no mistake in its findings of "underlying fact." The district court committed no clear error in finding that the NEISD failed to provide I.M. a FAPE under IDEA. NEISD claims the district court failed to consider the entire IEP and focused solely on two behaviors - elopement and toileting ignoring academic progress and progress on other behaviors. NEISD bizarrely claims the district court judge engaged in "disability remediation in disguise," whatever that might be. Doc. 26 p 44.

---

[3] Findings of Fact in the Record on Appeal are cited to as "FOF".

But, at its core, the IDEA's focus is on the needs and concerns of the particular child. *Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*, 197 L. Ed. 2d 335, 350; 137 S. Ct. 988, 998; 580 U.S. 386 (2017). "To meet its substantive obligation under the IDEA, a school district must offer an IEP [Individual Education Program] reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Id*. at 349. "The IEP must aim to enable the child to make progress. After all, the essential function of an IEP is to set out a plan for pursuing academic **and functional advancement**. *See* 20 U.S.C. §§1414(d)(1)(A)(i)(I)-(IV)." *Id.* at 400. (Emphasis added).

The Fifth Circuit's *de novo* review of the adequacy of an IEP is limited to two basic questions: (1) Did the school district comply with the procedural requirement of the IDEA; and (2) Is the IEP reasonably calculated to enable the student to receive educational benefits? *Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206-07, 102 S. Ct. 3034, 3051, 73 L. Ed. 2d 690 (1982).

The district court relied on the second *Rowley* inquiry in determining that NEISD failed to provide I.M a FAPE. The court's analysis of the second *Rowley* inquiry is guided by the evaluation of the following four factors whether: '(1) the program is individualized on the basis of the student's assessment and performance; (2) the program is administered in the least restrictive environment; (3) the services are provided in a coordinated and collaborative manner by the key 'stakeholders':

and (4) positive academic and **non-academic benefits** are demonstrated." *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F. ex rel. Barry F.*, 118 F.3d 245, 253 (5th Cir. 1997) (emphasis added). Although the courts have "never specified precisely how these factors must be weighed," the Fifth Circuit has "long held that the fourth factor is critical." *Richardson Indep. Sch. Dist. v. Michael Z.*, 580 F.3d 286, 293 (5th Cir. 2009); *Renee J. ex rel. C.J. v. Houston Indep. Sch. Dist.*, 813 F.3d 523, 529 (5th Cir. 2019) (citations omitted). The Fifth Circuit, however, has "not held that district courts are required to consider them or to weigh them in any particular way." *Richardson Indep. Sch. Dist. v. Michael Z.*, 580 F.3d 286, 293 (5th Cir. 2009). "[T]he whole educational experience, and its adaptation to confer 'benefits' on the child, is the ultimate statutory goal." *Klein Indep. Sch. Dist. v. Hovem*, 690 F.3d 390, 397 (5th Cir. 2012). Here, the NEISD failed to ensure I.M. received non-academic benefits to address the core of his struggles in school: elopement, toileting problems and communication needs.

## ARGUMENT

### I.      Standard of Review.

The Fifth Circuit reviews the district court's decision that a school district failed to provide a FAPE under the IDEA *de novo*, as a mixed question of law and fact. *Teague Indep. Sch. Dist. v. Todd L.*, 999 F2d 127, 131 (5th Cir. 1993). The district court's findings of "underlying fact" are reviewed for clear error. *Id*. "The

clear error standard precludes reversal of a district court's [factual] findings unless [the appellate court is] left with a definite and firm conviction that a mistake has been committed." *Houston Indep. Sch. Dist. v. V.P. ex rel. Juan P.*, 582 F.3d 576, 583 (5th Cir. 2009) (quoting *Jauch v. Nautical Servs., Inc.,* 470 F.3d 207, 213 (5th Cir. 2006 (internal quotations marks and citations omitted.) Whether the student obtained educational benefits from the school district's special education services is a finding of underlying fact. *Teague*, 999 F.3d at 131.

## II. NEISD Failed To Provide I.M. With FAPE Including An IEP Individualized To Meet His Unique Needs And ESY Services To Improve Non-Academic (Functional) Skills.

The district court correctly found that the first *Michael F.* factor, whether the student's program is individualized on the basis of the student's assessment and performance, and the fourth *Michael F.* factor, often considered the most significant factor, whether positive academic and non-academic benefits accrued to the student, weigh against NEISD. ROA.2912, 2917.

The crux of this case is whether I.M., a non-verbal child with autism,[4] was denied a FAPE because NEISD failed to provide him with an IEP that was individualized to meet his unique needs that provided him with **both** academic and

---

[4] Autism is a neurodevelopmental disorder generally marked by impaired social and communicative skills, "engagement in repetitive activities and stereotyped movement, resistance to environmental change or change in daily routines, and unusual responses to sensory experiences." *Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S. Ct. at 996 (2017).

non-academic benefit and centered on his services during the summer (Extended School Year), which were critical to his ability to begin the new school year where he left off the prior year. NEISD argued that Judge Ezra legally found I.M.'s IEP was not reasonably calculated to provide an educational benefit but factually found it provided academic and non-academic benefits in both school years. Doc. 26 p. 30-31. NEISD also argues that Judge Ezra improperly focused on the functional skills of elopement and toileting and ignored progress in academic and non-academic progress in other areas. ROA.2915. But this Court has more than once held that the judicial officers are to look at the whole child. No less than the Supreme Court has held that the student's educational program "must be appropriately ambitious in light of [the student's] circumstances." *Endrew F.,* 137 S. Ct. at 1000. The IDEA requires an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances. *Endrew F.*, 137 S. Ct. at 1001. The essential function of an IEP is to set out a plan for pursuing academic and functional advancement. *Endrew F.*, 137 S. Ct. at 999. "The adequacy of a given IEP turns on the unique circumstances of the child for whom it was created. This absence of a bright line rule, however, should not be mistaken 'for an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review.'" *Endrew F.*, 137 S. Ct. at 1000.

Just any educational benefit is not enough. *Endrew F.,* 137 S. Ct. at 998. Like the autistic child in *Endrew F.*, who was awarded payment for private school when the school district could not manage his behaviors, I.M.'s unique circumstances are to attain functional skills so that he does not elope, he does not have toileting issues, and he improves his communication. I.M. cannot hope to achieve academic goals without obtaining the functional skills of staying in the classroom and toileting appropriately.

The district court correctly agreed with the SEHO that the non-academic goals in I.M.'s IEP were of great importance to his receiving a FAPE. ROA 2911. It was clear I.M.'s critical skills of elopement and toileting behaviors after school breaks resulted in regression. ROA.2911. Based on the significant regression of critical skills, the district court correctly concluded that the SEHO's focus on I.M.'s elopement and toileting was warranted. ROA.2911.

Based on the Fifth Circuit's holdings, the district court agreed with the SEHO regarding extra ESY services and held that:

> Given the Fifth Circuit's guidance, the Court find, as did the SEHO that although I.M. was making clear academic progress, he was not adequately progressing in his non-academic goals and objectives after school breaks given his individual circumstances. The record is replete with instances where I.M. experienced documented regression after school breaks especially regarding elopement and toileting. (AR 297, 351, 392, 438, 458, 713, 716, 1613.)
> ROA.2917, 3022.

Finding the fourth *Michael F.* factor weighed against NEISD, the district court correctly held:

> Therefore, the Court finds that the SEHO was not wrong in weighing I.M.'s non-academic progress more heavily than his academic progress in determining that he failed to make sufficient non-academic progress under the IEP proposed by [NEISD]. Although I.M. progressed on many of his goals, the record supports that he was still regressing and falling behind on his elopement and toileting after breaks. Accordingly, the Court finds that I.M failed to make sufficient non-academic progress in key areas such as elopement and toileting upon returning from school breaks under the IEP proposed by the [NEISD].
> ROA.2917.

NEISD would have this Court find the district court's focus on I.M.'s regression and failure to progress in non-academic critical functional skills is not a denial of FAPE. Doc. 26 p. 32. That is simply not the law. The Fifth Circuit previously held in *Klein Indep. Sch. Dist. v. Hovem* that "the whole educational experience, and its adaptation to confer 'benefits' on the child, is the ultimate statutory goal." 690 F.3d at 397. In *H.W. v. Comal Indep. Sch. Dist.*, the Court focused its analysis on the student's overall educational experience including her behavioral issues. 32 F. 4th 454, 470 (5th Cir. 2022). Thus, the district court and the SEHO correctly focused on I.M.'s whole educational experience and found his regression and failure to progress in non-academic critical functional skills of elopement and toileting a denial of FAPE.

As the district court noted, "[t]he IDEA guarantees an appropriate education, not a perfect education, and the benefit conferred upon the student must be

meaningful and likely to produce progress." ROA.2914 citing to *Adam J. ex rel Robert J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 808-09 (5th 2003). Progress in non-academic benefits is essential to determine whether educational benefits were provided. *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F. 3d 245, 253 (5th Cir. 1997). Clearly, under the fourth *Michael F.* factor there must be demonstrated positive non-academic benefits to determine whether an IEP is reasonably calculated to provide meaningful educational benefit under the IDEA. *Id.* In *Hovem*, the Fifth Circuit explained that while behavioral modifications are an example of an IEP strategy that may remediate a disability, they are necessary to confer educational benefits. 690 F. 3d at 397. Thus, NEISD's claim that the district court's focus on elopement and toileting is disability remediation in disguise is unfounded. Doc. 26 p. 42. Put simply, a student who is leaving the classroom and dealing with soiling himself is not in a position to make the academic progress he could make without the interference of the functional skills.

Instead, "a disabled child's development should be measured not by his relation to the rest of the class, but rather with respect to the individual student." *H.W.,* 32 F.4th at 467 (quoting *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 349 (5th Cir. 2000). As the district court observed, to the "extent to which [I.M.] has progressed on [his] IEP goals and objectives, as well as [his] test scores and

percentile ranks, can aid this process, but no one factor can overwhelm it." *Id*. at 469; ROA.2916.

As the district court found, I.M.'s mother did not outright refuse any service offered her – including in-home training, only that she was already receiving in-home services and that the time offered by NEISD would not work with her schedule. ROA.3025. NEISD misleads the Court whether I.M.'s mother was satisfied with his academic progress suggesting that because she, as a single mother, could not schedule an in-home assessment for training and, without having offered any home training, NEISD is absolved from its failure to ensure I.M. made progress at school in elopement (so as not to get killed running away from school), and toileting and communication. Doc. 26 p. 36-37. The district court found it was an "inaccurate description by [NEISD] that it relied on the substance of the offered in-home training or looked at his mother's schedule in determining whether I.M. was provided a FAPE." ROA.3025. The district court disagreed with NEISD's insinuation that I.M.'s mother might have "frustrated the school's efforts," and thus, even if FAPE was denied the parent had some responsibility in the matter. ROA.3025. The district court noted that I.M.'s mother, a single working mother with limited time, already received in-home training from another source twice a month. ROA.2915 n. 8.

A. **The Purpose of ESY and NEISD's Concession I.M. Needed ESY.**

Extended School Year (ESY) services are special education and related services provided to the student "(b)eyond the normal school year." 34 C.F.R. § 300.106(b). NEISD has waived the argument that I.M. did not need ESY to address elopement, toileting and communication. It is taking this appeal to contest that it should not have had to expand the scope of ESY services.

But, the Fifth Circuit has long held that states must provide a continuous educational experience through the summer months under the child's IEP if that is the "appropriate" educational experience for the child with a disability. *Crawford v. Pittman*, 708 F.2d 1028, 1034 (5th Cir. 1983). *See also Georgia Ass'n of Retarded Citizens v. McDaniel*, 716 F.2d 1565, 1576 (11th Cir. 1983), [citations omitted]; *Yaris v. Special School Dist.*, 558. F. Supp. 545, 552 \*\*22 (E.D. Mo. 1983), *aff'd*, 728 F.2d 1055 (8th Cir. 1984); *Battle v. Pennsylvania*, 629 F.2d 269, 281 (3d Cir. 1980) (citations omitted.) Thus, the IDEA's mandate of a free appropriate public education, as judicially interpreted, includes the provision for a summer program if appropriate under a child's IEP.

A school district must provide ESY services at no cost to the student's family if it determines that the lack of such services will 'jeopardize[]' the student's progress. *Johnson ex rel. Johnson v. Indep. Sch. Dist. No. 4*, 921 F.2d 1022, 1028 (10th Cir. 1990) (per curiam). This has long been the case in the Fifth Circuit. In fact, in 1983, the Fifth Circuit was one of the first circuits to hold that categorically

refusing to consider special education programs that extend beyond 180 days is inconsistent with its obligations under the Education for All Handicapped Children Act of 1975 [the precursor to the IDEA]. *Crawford v. Pittman*, 708 F.2d 1028, 1035 (5th Cir. 1983). In holding that "[r]igid rules like the 180-day limitation violate not only the Act's procedural command that each child receive individual consideration but also its substantive requirements that each child receive some benefit and that lack of funds not bear more heavily on handicapped than nonhandicapped children." *Id*.

In *Alamo Heights Independent School District v. State Board of Education*, where the issue was whether the disabled student is entitled to have structured summer programming included in his IEP, the Fifth Circuit held:

> The issue is whether the benefits accrued to the child during the regular school year will be significantly jeopardized if he is not provided an educational program during the summer months. This is, of course, a general standard, but it must be applied to the individual by the ARD committee in the same way that juries apply other general legal standards such as negligence and reasonableness. The issue is simply the application of the *Crawford* ruling to the **situation of a particular handicapped child**.
> 790 F.2d 1153, 1158 (5th Cir. 1986) (Emphasis added).

The analysis of whether the child's level of achievement would be jeopardized by a summer break in his or her structured educational programming should proceed by applying not only retrospective data, such as past regression and rate of recoupment, but also should include predictive data, based on the opinion of professionals in consultation with the child's parents as well as circumstantial

consideration of the child's individual situation at home and in his or her neighborhood and community. *Johnson v. Independent School Dist. No. 4*, 921 F.2d 1022, 1028 (10th Cir. 1990).

In I.M.'s case, his IEP team determined elopement and toileting were critical skills and, based on data collected upon his return to school after summer breaks, determined the need for ESY services. His IEP noted that "[d]ata demonstrates that the student has shown regression following the interruption of services in behavior and skills related to independence (i.e. toileting)." ROA. 2909. Further, the IEP stated that "[c]ontinuation of services by attending ESY will provide [I.M.] with an educational benefit by reducing the potential loss of skills related to independence and behavior." ROA.2909.

That I.M. required ESY services is not in dispute. ROA.2911. The dispute is how many days of ESY services I.M. needs during school breaks to recoup skills upon his return to school. Based on previously gathered data taken upon I.M.'s return from summer breaks, his IEP noted that there was "documented evidence that the interruption of services will cause [I.M] to regress in behaviors and skills related to independence (toileting)." ROA.2909. It also noted that I.M. "has a documented history of regression caused by the interruption of services and has attended ESY every summer since the 2018-2019 school year" and that he would "receive an educational benefit from Extended ESY in order to reduce the potential loss of skills

in regard to independence and behavior." ROA.2910. As the two experienced judicial officers who reviewed the evidentiary record found, NEISD's failure to provide I.M. the appropriate scope of ESY service days to prevent regression caused by the interruption of services denied I.M. a FAPE.

## III. NEISD Failed to Individualize I.M.'s IEP to Address Progress in Elopement, Toileting and Communication Based on Assessment and Performance.

The dispute in this case centers on NEISD's refusal to provide I.M. *extra* Extended ESY services.[5] ROA.2911. The district court concluded that, given his circumstances, I.M.'s IEP was not sufficiently individualized to address his regression after school breaks, nor did it allow him to progress on these core non-academic goals. ROA.2912. Thus, I.M.'s IEP was not customized to his unique needs "on the basis of his assessment and performance." *Michael F.*, 118 F.3d at 253.

As the district court correctly noted, the first *Michael F.* factor requires that an IEP be individualized based on the student's assessment and performance. ROA.2907. In its analysis, the district court correctly relied on the IDEA requirement that when the IEP team (in Texas, the IEP team is called the ARD Committee)

---

[5] NEISD's "Standard" ESY services were offered for four weeks [June 7-July 3, 2021]. ROA 146, 2894. "Extended" ESY services were offered for six weeks [June 6 – 30 and July 11-21, 2022]. ROA.148. *Extra* "Extended" ESY services, as ordered by the SEHO, were provided from June 5 - August 3, 2023. ROA.162. The district's policy and practice is to limit ESY services to four four-hour days for four weeks.

develops a student's IEP it shall consider: "(i) the strengths of the child; (ii) the concerns of the parents for enhancing the education of their child; (iii) the results of the initial evaluation or most recent evaluation of the child; and (iv) the academic, developmental, and functional needs of the child." 20 U.S.C. § 1414(d)(3)(A)(iv); ROA.2908. Further, when a child's behavior impedes the child's learning or that of others, the IEP team shall consider the use of positive behavioral interventions and supports, and other strategies to address that behavior." *Id;* §1414(d)(3)(B)(i).

In coming to this conclusion, the district court correctly relied on NEISD's own documented evidence gathered by his teachers of I.M.'s regression regarding his elopement behavior during the 2021-22 school year which ranged over 40% in each nine weeks of the school year (see ROA.2909) and data that demonstrated regression following the interruption of services in behavior and skills related to independence (toileting). ROA.2911. Since I.M. was not in a regular classroom progressing through core subjects, the district court judge correctly found I.M.'s non-academic goals were also of great importance in his receiving a FAPE. ROA.2911; 20 U.S.C. §§ 1414(d)(3)(A) and (B).

There is no question that I.M.'s behavioral/non-academic skills of elopement and toileting behavior were identified by his IEP team as critical skills that required ESY services to address those behaviors. ROA.2911. His IEP team even conducted

a Functional Behavioral Assessment (FBA) to exclusively address his elopement. ROA.2911.

NEISD argues that the district court's job was to determine whether I.M.'s IEP was reasonable, not whether I.M. should receive two extra weeks of ESY services which NEISD considered ideal. Doc. 26 p.32. But NEISD misses the mark. The district court's "job" was to determine whether I.M.'s IEP was "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F.*, 137 S. Ct. at 1001. Clearly, I.M.'s IEP developed by NEISD simply was not. The district court correctly relied on data gathered by NEISD that documented I.M. experienced regression on school breaks longer than several days. ROA.2912. Given I.M.'s circumstances, including his toileting and "alarming" elopement behaviors, the district court correctly concluded that the first and fourth *Michael F.* factors weigh against NEISD. ROA.2912. The district court correctly found that I.M.'s IEP was not sufficiently individualized to address his regression after school breaks and did not allow him to progress on core non-academic goals. ROA.2912. The district court committed no clear error.

## IV.    I.M.'s Need For Communication All Year.

NEISD challenges I.M.'s right to year-round access to his voice output device. Doc. 26 p. 38. NEISD claims that neither the SEHO nor the district court judge cited to any authority for the position that a public school is supposed to provide assistive

technology (AT) devices to a student when the student is not at school. Doc. 26 p. 38. However, NEISD forfeits this claim regarding the voice output device (VOD) because it did not raise this issue before the district court. ROA.2901 n. 4. In *LeJeune G. v. Khapara Charter Sch*., a parent forfeited her argument on appeal to the Third Circuit because she failed to present one or more legal theories before the district court. 779 F. App'x 984, 989 (3rd Cir. 2019). Thus, NEISD's challenge to I.M.'s access to the VOD fails because it did not appeal the SEHO's findings and conclusions before the district court. ROA.2901 n. 4. Therefore, I.M. is entitled to access to his VOD all year long.

## V. Issues Not Before the SEHO or District Court - Least Restrictive Environment And Collaboration.

The NEISD argues that it met the requirements of the Least Restrictive Environment (LRE) and ensuring collaboration of stakeholders. Doc. 26 p. 39. Neither of these items were before the District Court or even the SEHO. The SEHO defined the sole issues at hearing as: (1) FAPE: Whether [NEISD] denied Student a FAPE by failing to provide an appropriate ESY program; and (2) FAPE: Whether [NEISD] denied Student a FAPE by failing to develop an appropriate IEP. ROA.144.

The parent did not contest the LRE factor at the administrative hearing. ROA.157-159. The parent did not contest the LRE or the collaboration factor at the district court level. ROA.2912-2913.

In *D.C. v. Klein Indep. Sch. Dist.*, the Court explained how to address a *Michael F.* factor that is not considered by the district court. 860 Fed. App'x 894, 906 (5th Cir. 2021). The Court emphasized that district courts do "not legally err by affording more or less weight to particular *Michael F.* factors" and explained that "district courts are [not] required to consider" these factors at all, so long as their analysis comports with the substantive standard set forth by the Supreme Court. *Id.*

NEISD attempts to claim that it was implicit in the district court's decision that the "significant and extensive supports in the IEP allowed I.M. to participate with non-disabled peers as much as possible." Doc. 26 p. 29. But the SEHO and the district court both correctly rejected NEISD's argument that the behavioral supports he needed to support the critical skills of elopement and toileting were sufficient in his self-contained special education classroom, much less in general education. ROA.2911.

Likewise, there was no dispute about the collaboration requirement at either the administrative hearing or the district court. But NEISD can be wrong even if it was collaborative and I.M. was in the LRE. It was well within the district court's prerogative to conclude that the NEISD's efforts to collaborate with I.M.'s parent or that he received educational services in his LRE did not outweigh its failure to provide him with an individualized IEP and the absence of meaningful demonstrated benefits. *D.C.*, 860 Fed. App'x at 906. Telling parents "no" repeatedly in multiple

meetings can be viewed as collaborative, but, if the school district is wrong, it does not mean the school district provided FAPE. Further, there was no dispute that educational services were provided in I.M.'s LRE. This again was not an issue at hearing or before the District Court.

In conclusion, based on the *Michael F.* factors, the district court correctly found by a preponderance of the evidence that I.M.'s IEP in regard to his need for increased extended ESY services and access to a VOD all year was not reasonably calculated to enable him to receive educational benefits in light of his unique circumstances. When considered as a whole, affirming the findings and determination of the SEHO, both experienced judicial officers correctly found that NEISD denied I.M. a FAPE.

## VI. NEISD Forfeited Claim That I.M. is not the Prevailing Party Entitled to Attorneys' Fees.

NEISD has failed to raise any disagreement with district court's finding that granted I.M. prevailing party status and awarded attorneys' fees. It raised no objection to the fees awarded, including attorneys' rates and final amount. ROA.2918–41. By failing to raise their disagreement at the appropriate time, NEISD has procedurally forfeited its right to raise and argue this claim. *Indigenous Peoples of the Coastal Bend v. United States Army Corps of Eng'rs*, 2025 U.S. App. LEXIS 7245 at *10, 2025 WL 938104 (5th Cir. 2025). In *LeJeune G. v. Khapara Charter Sch.*, a parent forfeited her argument on appeal because she failed to present one or

more legal theories before the district court. 779 F. App'x 984, 989 (3rd Cir. 2019). Because NEISD failed to present an argument challenging prevailing party status and attorneys' fees and costs in its appeal to this Court it is barred from raising this claim. *Id*. Thus, NEISD is now fully barred from raising these defenses. *Id*.

## <u>CONCLUSION</u>

This Court should find NEISD denied I.M. a free appropriate public education because it denied him sufficient ESY services, and consistent access to his voice output device. NEISD must be held to the *Endrew F.* standard. A child who elopes to the extent he is almost killed is not receiving a FAPE. A child who is soiling himself repeatedly when it could be avoided is not receiving a FAPE. A child who is being taught use of a voice output device to enable communication but is then denied use of the device is not receiving FAPE. The plan was not reasonably calculated to enable I.M. to receive educational benefits in light of his unique circumstances. ROA.2918. NEISD forfeited its claims regarding prevailing party status and attorneys' rates and fees. This Court should affirm the district court decision.

Respectfully Submitted,

/s/Yvonnilda Muñiz
Yvonnilda Muñiz, Attorney at Law
State Bar No. 24007717
**LAW OFFICE OF YVONNILDA MUÑIZ, P.C.**
P.O. Box 92018
Austin TX  78709
Tel.:  (512) 633.9944/(512) 705.4191
Fax:  (888) 398-8808
Email: ygmuniz@outlook.com

*COUNSEL FOR APPELLEE*
*I.M. BY NEXT FRIEND BIANCA R.*

## CERTIFICATE OF SERVICE

This is to certify that on April 4, 2025, the foregoing instrument has been service via the Court's ECF filing system in compliant with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure on all registered counsel of record and has been transmitted to the Clerk of the Court.

Ricardo R. Lopez
Christopher H. Schulz
Schulman, Lopez, Hoffer & Adelstein, LLP
845 Proton Road
San Antonio, Texas 78528
Email: rlopez@slh-law.com
Email: cschulz@slh-law.com

/s/Yvonnilda Muñiz
Counsel for Appellee

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to FED R. APP. P. 32(g) and 5th Cir. R. 32.3, the undersigned certifies:

1. This brief complies with the word limitation of FED R. APP. P. 32(a)(7)(B) because this brief contains 7189 words, excluding the part of the brief excluded by FED. R. APP. P. 32(f).

2. This brief complies with the typeface requirements of FED R. APP. P. 32(a)(5) and the type style requirements at FED. R. APP. P.(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for MAC at Times New Roman font 14-point typeface.

/s/Yvonnilda Muñiz
Counsel for Appellee

Dated:        April 4, 2025